Good morning, Your Honors. I would like to reserve seven minutes for rebuttal, if I could. All right. You can watch your time clock there, and we'll also try to help you. First of all, Your Honors, I'd like to take up this letter of August 7, last week, which the government sent in, attempting at the last moment to raise some cases, Semtec International v. Lockheed Martin and Headwaters, and attempting to, quote, withdraw a concession that, for res judicata purposes, the Texas district court's dismissal, the civil claim with prejudice, was a ruling on the merits, et cetera. We don't believe it was appropriate for them to wait until the last minute. We filed our reply brief July 3rd this year, and they waited until five days before this hearing to file this brief. And this is a 2001 case, a Semtec. It's not a new case. So they obviously should have known about it when they filed their epilese brief. So we would ask the Court to disregard completely that letter or no. So we strike the case from the law books, too? No. No. We should not. And I'm prepared to address it. But I would ask. Let's do this. You know, if we do a lot of independent research in these cases, and so we come across usually long before people file 28J letters, we've come across the same cases because our eagle-eyed clerks have been out there scouring the books and Lexis. So if we determine after, and we have read these in the course of preparation, if we determine that an additional response or time is necessary, we'll let you know. But I can tell you in my general experiences that it usually doesn't add anything. I mean, you can make your points today. And if we need further briefing, we're quite happy to call for it and you would hear from us. Okay. Thank you. Your Honors, the basic facts in this case are that in the Texas case of Endeavor Houston or IH v. Florent, we maintain that that's collateral estoppel that should be used for the criminal prosecution of Mr. Batia in the U.S. District Court here in California. There was privity between the government and the plaintiffs in the case in Texas. And more particularly, there was a dismissal with prejudice and that by the Judge Hughes in Texas. And the judge made clear comments on the record referring to this analogy of a train wreck, saying it could be a train wreck. Nobody is necessarily legally responsible. In other words, bad things happen and you can't just blame someone. But the motion to dismiss was based on several grounds, right? You mean in Texas? Yes. Yes. Including what? Well, there were summary judgment motions by some of the defendants in the Texas, including Defendant Urgo, based on several grounds that there was no materiality of fraud involved and other things. And also lack of jurisdiction. Is that what I'm saying? Lack of jurisdiction, yes. As higher to specify the fraud? Yes. But what happened here was after the summary judgment motions were heard, then the plaintiffs in the Texas case moved to dismiss without prejudice under FRCP Rule 41A. So we really don't know why the District Court granted the motion to dismiss. Well, I believe we do know. We look in the record, the District Court stated its reasons that in November of 2005, when it decided to dismiss it with prejudice, it stated that it didn't feel that this was material fraud and that, as I said, the analogy with the train wreck situation, and it wanted to make sure this didn't get refiled. So it seems extraordinary that the plaintiffs wanted to dismiss without prejudice, but the court said, no, we're going to dismiss it with prejudice. And we would maintain that the fundamental issues are the same as far as the collateral estoppel effect on the criminal case in California. Now, the government argues that there was no privity between itself and the plaintiffs in the Texas case. We maintain that, of course, there was privity. The government was delaboring or et cetera. But we would ask, does the case in California involve another alleged victim also? Besides the case in Texas. The victims are the ascerbias who are the victims. Well, yes. Interestingly enough, the criminal case in California also alleges Orlando is a victim. But Orlando was a defendant in the civil case in Texas and now is said to be a victim. So he switched sides from being a defendant to being on the same side as the ascerbias, which raises other questions, I think, concerning the credibility of the government's case. But that's true. But in any event, the fact of the matter is that it seems to me that the Texas judge decided that fraud was the critical elements of fraud were just not present. That's why he dismissed it with prejudice. And to allow a second case to go forward here involves the double jeopardy issues and also involves attempts to basically relitigate the same issues. Now, I would also argue that in Concha v. London, the Ninth Circuit case that we cite in our reply brief, it does state that, quote, a voluntary dismissal without prejudice is not adverse to the plaintiff's interests. The plaintiff is free to seek adjudication of the same issues at another time in the same or another forum. Quite the opposite is true with respect to a voluntary dismissal with prejudice. By obtaining such a dismissal, the plaintiff submits to the judgment that serves to bar his claim forever, unquote. So the ascerbias submitted to the dismissal with prejudice in Texas, they didn't appeal it. Thus, it became a final order. That distinguishes it, by the way, from the Semtec case, where the Semtec case they did appeal it.  And that is a procedural issue, not a substantive issue, whereas in our case the fraud is a substantive issue. So there's a substantial difference between the cases there. Let me go back to this dismissal, the filing of the Rule 41 motion by the parties, and then the judge in effect converting to a dismissal with prejudice. What the judge said is, I don't want this coming back somewhere else filed in Kansas next week. But what we don't have here is any determination as to anything substantive, you know, whether there was intent or materiality, and that's been dismissed now. So it's we're left really with the trial judge's comment of how he wants to engineer the case. But I'm a little at a loss to figure out what, how that defines the substance. And maybe you can illuminate that. And also, if you have any cases that you think answer that question, that would be useful. Yes. I would point the Court to excerpt of Record 3652, paragraphs 22 to 25, or tab 2, and 3653, paragraphs 1 to 14. It's pages 29 and 30 of the appellant's opening brief, wherein the Texas court stated, quote, to the plaintiffs there, to the Serbias, quote, your clients did not take those representatives for so important that they were incorporated in any of the operative documents. We have at least three lawyers, et cetera, et cetera, end quote. But as it turns out in this case, what are important to the Indera principles was not the wire transfer from Bankers Trust or the documents and the pages of representations and warranties or the documents or the pages where they could have been or done, Bradstreet, et cetera, et cetera. They had the first bunch, didn't bother with the second because a dinner, a lawyer whom they had never met until that time told them that she was sure they would be very happy and these people must have done a lot of business. And he says, again, I'm not saying she said that, but if she did, it simply is insubstantial, end quote. The Texas court also said that regarding. If we just stopped right there, I'd be left scratching my head as to having any substantive ruling that could serve as a basis for any kind of variation on res judicata. It seems to me that the substantive ruling is that this was not material fraud, not material reliance on their, certainly that the statements were made. Just like later on he goes on to describe the impersonation of Sir Richard Benson saying that this is sort of pathetic window dressing. It wasn't material. He went on to explain that. Were you counsel in the case in Texas? Oh, no. No, I was not. Did counsel there ask the court to make specific findings on its order of dismissal? You mean counsel for the defendants? Yes. Your client. Counsel for your client. I was not counsel. I'm not licensed in Texas. No, but I'm just saying, did counsel that was there ask the court for findings on the dismissal order? That would have been real easy, right? I don't believe so, Judge. But Mr. Batia recently, I believe August 4th this year, did file on his own improper in Texas District Court. He filed a action for declaratory relief, mandamus, where he is asking for declaratory findings of the kind I think you're asking about. But it wasn't done as far as whether they specifically asked for specific findings of fact. So I don't believe. Maybe he was kind of late to do that in that case, right? It may well be, but he did on August 4th this year, which was a week ago. And at the time that the court entered the order of dismissal, the criminal case had already started here in California, right? The criminal case started May of 2005 here. The order of dismissal in the Texas case was six months later, November of 2005. And the motion to dismiss by Indira was filed subsequent to the criminal case being opened, right?  I believe the motion to dismiss by the SRBS was filed shortly before the criminal indictment was filed here, according to my memory, or around the same time. But the dismissal was actually entered in November of 2005 by the Texas judge. Your client was already under indictment then, right? In November? Yes. That's correct. Yeah. So at that point, I would, you know, it seems to me that the Texas court did make material findings, that there was no materiality and so forth, and that it ---- What's your best case that my colleague has asked you? What's your best case to show that you're entitled to relief here? You mean the best case to be cited? The best case out of the Ninth Circuit that says you're entitled to collateral estoppel or race judicata on this. I think Concha v. London, 62, Fed, 3rd, 1493. I would also like to cite two other cases, Stewart v. U.S. Bank Corporation, 297, Fed, 3rd, 953 and 956. That's Ninth Circuit, 2002. And there's also Normandu v. City of Phoenix. It's 516, Fed, 2nd, 1054, District of Arizona of 05. Which of those was a criminal case? Pardon me? Which of those was a criminal case? They don't sound like criminal cases to me. No, that's right. They were civil cases, but they do deal with the issue of race judicata. In our briefs, we do cite those several cases that deal with that issue of a criminal case following a civil case. The other, you know, difficult path in a case like this is the whole privity. And even this virtual representation or something along those lines, the Supreme Court has been pretty clear in a recent case that they don't want us to go down that route. So what are the, what do you think are the foundational blocks on which you could sustain privity? On which I could sustain privity. The government assisted the plaintiffs in the Texas case in locating the witnesses and persuading them to testify in exchange. Well, Montana's the case that you rely on in that area. Yeah. The facts in this case are not Montana. So you would be asking us to go further. Do you concede that? Or do you think your facts are as strong as Montana? I don't see that they are, but. I would say they are as strong as Montana, but in a sense, you would be going a bit further. That's true. But, I mean, fundamentally, I do believe they're at least as strong as Montana in that regard. And we had, you know, we did ask for an evidentiary hearing on that issue, which was not granted. Well, that raises a whole other issue in terms of you waited until your reply brief, I think, and then in the lower court you didn't ask, the district court didn't rule on that. So why isn't that waived? The right to an evidentiary hearing? Uh-huh. Right. Mr. Bhatia did ask for an evidentiary hearing in the reply brief, and so it seems to me at that point it was still a live issue and that the court could have ruled could have supported it. Well, where's the offer of proof regarding the privity identity issue sufficient that sufficiently definite, specific, and detailed and non-conjectural to enable the court to conclude that a contested issue of fact are in question? I don't see it in this record. Well, there are in our briefs, in the appellant's opening brief, we do cite several places where the – in the depositions of the various parties in the Texas case, they were asked what role the government played, how the FBI agent, Janet Berry, became involved with them, assisted them in taping conversations with Mr. Bhatia, et cetera. In that regard, I do think there is a sufficient record in that regard. But let me ask you then, you know, if you have to write this up in terms of a principle, we would have to be enormously careful, because obviously there are multiple situations where the government, in parallel with civil parties, is undertaking investigation and potential prosecution, and if you write the rule too broadly, then basically every time the government is investigating something that's also in the civil arena, then they're, quote, in bed and in cahoots with each other and you're kind of joined at the hip, which probably neither the government nor the civil side would like as an absolute rule. So if you were to tell us in this case what would be the scope of the rule that we would write that would say such-and-such brings you into the ambit of privity in the civil criminal context? Of course, every case is unique, but I think the general scope, the general rule that I would suggest would be that if the government impels the plaintiffs to sue in a civil case, if it actively encourages them and prods them to do so, if it, in this case, I believe it paid one of the informants, Mr. Modi, to participate in that, I think that would be it. So where the government actively not only assists the plaintiffs, but impels them and motivates them to be basically surrogate. But that can't be right, because if frequently a criminal action doesn't make people whole. It does something separate than a civil action. So if the government were to say to someone, yeah, hey, we're going to prosecute this person, but that's not going to get your money back. So if you want to get your money back, you need to take these people to civil court. Then I see the argument building from there if we, upon your rule, would be, oh, the government told us we have to go to civil court to get our money back, so therefore the government is, you know, basically compelling us. And that can't be right. Well, of course, they can get restitution in a criminal case, but it's more than just telling them that they can go to a civil court and get their money back. It's also impelling them and actively encouraging them to file, supplying them with information, facilitating witnesses, things of that nature. But I would suggest that the by the way, I asked for a seven-minute rebuttal. You have two minutes left. So may I? You may want to reserve that. Reserve that. Okay. I will reserve it. Good morning. May it please the Court, Hartley West for the United States. Let's first start by clarifying what actually happened procedurally in Texas. Indera filed this civil lawsuit against Mr. Baccia and a number of other defendants alleging civil fraud and a number of other claims. The other defendants moved to dismiss, and subsequently Mr. Baccia moved to dismiss too. Indera had filed a bill of particulars identifying the specific misrepresentations alleged against each of the different defendants. There was never a hearing on Mr. Baccia's motion to dismiss. Mr. Baccia never filed a substantive motion. What happened was Indera voluntarily moved to dismiss the complaint without prejudice. After Indera's attorney stated that he did not intend to refile the case anyway, the district court then dismissed with prejudice. So that's what actually happened in Texas. Was that stated in open court or in the motion? It is. And the page of the record is ER-3735. Was that subsequent to or before the criminal charge was filed here? That was after the indictment was filed. The indictment was filed on May 26th, 2005. Baccia moved to dismiss the complaint on June 10th. It was opposed. And then the court dismissed in November of 2005. But you're saying it turned into a voluntary dismissal on the part of the plaintiffs, but they wanted to retain without prejudice that the court said, hey, if you're picking up your marbles, we want you to go away permanently. We don't want to see you back. More or less. Let me read the court the exact words that happened at ER-3735. There was the discussion about I don't want to see this coming back in Kansas next week. Then Mr. Baccia's attorney was asking. She couldn't hear what one of the attorneys was saying. And so the court then stated on the record, mainly because in that case he was nodding and he didn't make, and that doesn't make much noise, he says, Mr. Eggleston said that they weren't going to refile them anyway, so it didn't really matter. And so then Mr. Baccia's attorney said, so will you be dismissing it with prejudice? And the court said, yes, ma'am. So that clarifies that Indera's attorney was saying we're not going to refile anyway, and so the court decided to dismiss with prejudice. So that's what happened in Texas. Now, the Supreme Court has made clear that issue and claim preclusion only apply where one has had a full and fair opportunity to litigate, and here the government had no opportunity to litigate. Well, the government's not a party to that either, right? Exactly. So let's talk about the collateral estoppel issues first. The party to be precluded has to have been a party or privity. There has to have been the same issue. That issue had to have been fully litigated and necessarily decided. And none of those prongs were met here, and for that reason, we would ask the court to find that it has no jurisdiction, and Mr. Baccia has not made a colorable claim of collateral estoppel as well as res judicata, which I'll talk about next. Here, the party, the United States was not a party. So the question is, was the United States in privity? And it was not. In fact, Montana, the facts were much stronger, as Your Honor pointed out. There, the government had not only instructed the litigation to occur, but also had financed the litigation. There, the court said that it was the government had stipulated that it had taken all of these actions, and the court found that there was the laboring oar had been taken for collateral estoppel purposes. What evidence do we have in this case that the government participated? Is there any evidence of affidavit or testimony or deposition or anything? No. What happened was that there are allegations made by Mr. Baccia, and the government admits that those don't even warrant an evidentiary hearing, even if they are all taken as true. So what the defendant alleges happened is, let me just get my list, that the government conducted and observed interviews, received information and evidence from the plaintiff Indira's officers and attorney, helped locate witnesses, recorded a meeting with the defendant, induced witnesses to speak, told Indira's officer to continue communicating with defendants so that the government could gather evidence, and informed a witness of its theory of the case by stating that Mr. Baccia tended to have an error, create an error of legitimacy. So those are all of the allegations. Well, now, are any, which of those things would you term as being that the government investigating its criminal case, and which of them would you say involved them with the civil case? Exactly. They are all the government investigating its own case. This is all the normal stuff that the government does when it's investigating, and the FBI does when it's investigating a case. It's going to interview witnesses. It's going to interview victims. It's going to perhaps try to monitor some interviews and some conversations and ask somebody, hey, keep talking with them, maybe even wear a wire, and we can monitor the conversation. It's building its case. It's collecting its evidence. And it's doing nothing more than that. That does not. Is there any evidence of the government directing any strategy or conduct in the civil litigation? No. Except for, as I just mentioned, saying, asking the adverseas to continue communicating with some defendants so that the government could build evidence if Your Honor regards that as strategizing, then that would go to that. But otherwise, no. There's no evidence that the government instructed the litigation to occur, financed any part of it, nothing like that. So this doesn't even come close to Montana, and nor does it come close to the other cases that talk about there having to be a Headwaters, for instance, that there must be a close relationship, substantial participation, tactical maneuvering, identity of interest, adequate representations. And Headwaters says parallel legal interests are not sufficient. Here, the government was only investigating its own case and gathering evidence. Now, essentially, I think that Judge McKeown said, you know, previously, all right, in terms of how a court would craft a rule as far as that goes. We have Montana out there right now. I see, you know, from all perspectives, I see if you look at it from a trial court's perspective, and any time a court is faced with any sort of double jeopardy, race, judicata, collateral, estoppel, of course courts, you know, it sort of brings courts to their knees in the sense that if they get them wrong, you know, obviously a person shouldn't have to go through a trial. If those apply, on the other hand, where there's a, if there's a colorable issue and there's an interlocutory appeal, that has the effect often of delaying another case from going forward. How important is it in this, you know, what sort of, how important is it for courts to know what would be a colorable issue for purposes of, because obviously if there's no colorable issue, then it's a dismissal. Right. What, you know, what do we have out there in the legal landscape to assist courts? Well, I think HICCI is very helpful here. And in HICCI, the issue was whether the United States was collaterally estopped from proving a certain issue regarding an SEC disgorgement order. Yeah, that case sounds familiar to me. I thought it might to you and to Judge McEwen as well. The court held that it was not the same issue, that the SEC and the United States were not the same party. The United States had no full and fair opportunity to litigate, and it held that there was no colorable collateral estoppel claim and therefore no jurisdiction. And the court can do exactly the same thing here by looking even very superficially at what happened below. There's no support for any of the prongs of either collateral estoppel or res judicata. And so we think that the district court was just wrong in saying that it found it was a colorable claim. The court said it was weak, but that there was some possible validity, which is the  Do you disagree? Hickey adequately covers this issue, but your position is that the court just got it wrong, or do you think that there's something here that is different from Hickey that would be helpful to trial courts? No, I think the district court was reluctant to do anything other than stay the case pending this Court's decision, and I think that's probably why it found that there was some possible validity, although it was weak. I think that this Court can find that there is no possible validity. It's plain that the United States was not a party, was not in privity, and moreover, that each of the other prongs was plainly not satisfied. For collateral estoppel, they were, and for res judicata as well, they were just plainly different claims. The criminal case, let me start with the civil case. The civil case was Indera suing a bunch of defendants about a bunch of different claims, including civil fraud. State fraud requires a material misrepresentation that is knowingly false. By contrast, the criminal case alleged wire fraud and money laundering. And the wire fraud scheme does not require any specific misrepresentation at all. It requires a material scheme to defraud, and here it was much broader than just Indera. It also alleged as a victim Carlton Orlando. Now, the defendant points out that Carlton Orlando was a defendant in the civil case. Well, I submit that that actually goes to show that the government was really not involved, because there they were saying it was a defendant, and here the government is saying that it's a victim. But basically, the criminal case is much broader. The district court did not commit clear error in finding that the rights at issue in the civil litigation were distinct from the rights at issue in the criminal litigation, and that the civil case has little to do with, as the Court said at 3782, with the criminal wire fraud and money laundering indictments. The private financial rights of Indera are separate and distinct from the public right against wire fraud and money laundering. Moreover, the third prong of collateral estoppel, that the issues have been fully litigated, is again quite clear that they were not. Under Lawler and Amadeo, where a matter was dismissed before the issues were litigated and there are no findings of fact or conclusions of law, it was not actually litigated for collateral estoppel purposes. For that reason alone, the Court can find it was not colorable. But finally, going to the necessarily decided prong, we have no information that this was necessarily decided. It was dismissed with prejudice, without even a hearing on the motion to dismiss. There were no substantive motions. Now, the defendant points to this hearing that occurred where he says that the Court was really implicitly making factual findings regarding materiality and so forth. That is not at all what happened. And I would ask the Court to look at excerpts of record, if it is interested, excerpts of record 3614 through 89, which is the relevant parts of the hearing, and compare that with the bill of particulars identifying the alleged misrepresentations by Mr. Boccia. They were not the same. But even as a basic matter, at that hearing, that hearing was not about Mr. Boccia, and it was not about Mr. Boccia's representations. What was the hearing for? The hearing was about the other defendants on the other motions to dismiss and about their particular misrepresentations. These other defendants were attorneys. The Court was pretty appalled that attorneys drafting documents were being sued for 3614 and 3649, that it was even assuming that Sherwin & Noble, the lender, one of Mr. Boccia's companies, was a crook. He was saying, but let's look at the representations by these lawyers who are drafting documents. What does that have to do with materiality? This wasn't about Mr. Boccia. He wasn't there, and his attorney wasn't there. They weren't even invited to the hearing. It didn't have to do with him. Moreover, the Court said at 3625 and 3626 that it was just addressing its worries. It wasn't making findings. It said it was not resolving the issue at 3632. It was basically flagging for the parties, other parties, not Mr. Boccia, what it thought were issues in the case and ruminating out loud about them, but it was not resolving these issues. So nothing was necessarily decided. Nothing was fully litigated. It's not the same issue. The government wasn't a party. The Court can find that there was no colorable claim of collateral estoppel and find no jurisdiction on that ground. It's even simpler on race judicata. Race judicata requires same claims, same parties, final judgment on the merits. We've already talked about why it's not the same parties. We've also already talked about why it's not the same claims. But more so, regarding the same claims, under Montana, taking a laboring oar in controlling the litigation, which is what Mr. Boccia alleges the government did here, under Montana, that is not sufficient for race judicata. And I would ask the Court to look at footnote 5 and page 154 of that case, where the Court says that preclusion of such nonparties, such as one taking a laboring oar, as happened there by financing and directing the litigation, falls under the rubric of collateral estoppel rather than race judicata because the latter doctrine presupposes identity between causes of action, and the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right. Montana says where it's just a laboring oar theory, it's not the same cause of action. And in footnote 5, the Court rejects the idea that one who takes a laboring oar can be in privity. So it's not the same parties, it's not the same claims, and as we submitted in our 28J letter, under Semtec, it's not a final judgment on the merits. The defendant cites to Concha v. London as one of their strongest cases and asked the Court to rule in accordance with that, that it was a final judgment on the merits, but Concha v. London regarded finality for appeal, not race judicata. More importantly, it was pre-Semtec. Concha v. London was a Ninth Circuit case from 1995 and Semtec was Supreme Court 2001. The defendant also mentioned when the Court asked for its best cases, two additional cases, I tried to catch the names and write them down, and from what I could catch of what he said, Stewart v. U.S. Bank and Norman something, neither of those cases was cited in their briefs. I haven't taken a look at them, so I can't comment on them. But again, on race judicata, no colorable claim. There's not the same parties, not the same claims, and no final judgment on the merits. The Court can find no jurisdiction there as well under Hickey. Finally, regarding the evidentiary hearing, we submit that it should be a plain error standard of review. And in fact, to the extent that the defendant did request an evidentiary hearing at all in its reply to its motion to dismiss, it was saying there should be an evidentiary hearing for the government to establish something, which is not the burden of proof. But under any standard of review, whether it's abuse of discretion or plain error, there was no error under zone. Zone held that there need not be an evidentiary hearing where the defendant has produced no evidence in that case that the State was merely a tool of the Federal government. Here, even assuming that all of the defendant's allegations are true, showing that the government – it shows nothing more than the government was acting on its own behalf, investigating its own case. And this does not establish that NDERA was a tool of the government. So for that reason, we ask the Court to find no jurisdiction, because Mr. Bocci has not established a culpable claim of preclusion. And if it does reach the merits, we ask the Court to affirm the findings of no res judicata, no collateral estoppel, and to find that the Court did not err in not holding an evidentiary hearing. If there are no further questions, I'll stop there. Thank you. You make the clock at 2 minutes. We'll give you 2 minutes for rebuttal. Okay. Thank you. Thank you. Counsel said the government had no opportunity to litigate in the Texas case. That's not – that's not correct at all. They obviously did have the opportunity to do so. And they could have continued it. And I would also point out that it was only after Mr. Boccia filed his motion to dismiss the Texas case that the Texas Court did dismiss that whole case. What do you mean they had an opportunity to litigate? What would they have been litigating? The government in the Texas case? Right. Well, they could – I mean, they wanted to – they wanted to prosecute him. And they ended up prosecuting him. So what would they have been litigating in that? The elements of fraud, the elements of materiality, his role, that sort of thing. They could have – Well, let's just say a government lawyer had shown up there and wanted to say something. Would a judge have let the government lawyer talk? Well, I mean, normally the government is not involved as a plaintiff in a civil suit. That's right. But the thing is, here the government was definitely so involved with the plaintiffs and with their attorneys in their preparing their case that they – in effect, we maintain that the Servias or Derry-Houston were surrogate plaintiffs for the government. And therefore, in that regard, the government could have litigated, you know, through them. Could the government have been heard on a motion to dismiss? They could have – yes, they could have intervened. They could certainly have intervened. Did they intervene? I don't believe they did in the Texas case. That's one of the things they could have done. They had the opportunity to do so. Well, had they, then that makes your argument stronger. But they didn't. Mm-hmm. They did not intervene. That's correct. Yeah. But I mean, the question is, did they have the opportunity to litigate? And the answer is yes, they did. And they could have intervened and done so and been heard in that regard. And they didn't do so. And they could have also persuaded the plaintiffs there to appeal even that. But they didn't even do that either. So in that regard, they didn't do it. I guess I'm missing that. That to me seems like you're saying all the things that they didn't do. I'm seeing that as that they weren't involved. Well, they had the opportunity to do more. The question is, under collateral estoppel, did the government have the opportunity to litigate? And the counsel said, no, they didn't have the opportunity. And what I'm saying is, yes, they did have the opportunity. If they chose not to exercise that opportunity, that's different than saying they didn't have the opportunity. But they certainly did have the opportunity to do so. So that's the other thing. The other thing I would suggest that the court consider in its ruling would be to order an evidentiary hearing on the issue of privity, as possibly to remand it to the lower court, and order an actual evidentiary hearing on privity, so that some of these unclear issues can be resolved in more detail. I think the court has some questions about that that might require an evidentiary hearing. Thank you. The case just argued of United States v. Despitee is submitted. I want to thank both counsel for your argument and we're adjourned for the morning. All right. This court will be in session in a few minutes. Thank you.
judges: McKeown, Callahan, Siler